**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY DAVID, Individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br>     v. <br><br> BRITISH AMERICAN TOBACCO P.L.C., JACK MARIE HENRY DAVID BOWLES, TADEU MARROCO, and JAVED IQBAL, <br>    Defendants. | **Case No:** <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>JURY TRIAL DEMANDED</u> <br><br> <u>CLASS ACTION</u> |

Plaintiff Gary David ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding British American Tobacco p.l.c ("BAT" or the "Company"), and information readily obtainable on the Internet.

1

Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded BAT securities between February 9, 2023 and December 6, 2023, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased British American securities during the Class Period and was economically damaged thereby.

7.    Defendant BAT is a multi-national tobacco company that sells cigarettes (which the Company refers to in its filings as "combustibles" or "sticks", for individual cigarettes) and other tobacco-related products, such as vaping products, chewing tobacco, snus, and heated tobacco products. BAT refers to itself in its filings as the "Group".

8.    In January 2017, BAT, which already had a 42% stake in Reynolds American Inc. ("Reynolds"), took over the remaining interest in Reynolds for $49.4 billion dollars, valuing Reynolds at around $86 billion. This resulted in Reynolds becoming a BAT subsidiary. In doing so, BAT took control of the Camel, Newport, and Natural American Spirit cigarette brands (the "Premium American Cigarette Brands" or the "Brands"), among others, which are considered to be premium cigarettes.

9.    Defendant BAT is incorporated in the United Kingdom and its primary U.S. office is located at 401 N. Main St. Winston-Salem, North Carolina 2710. BAT's American Depositary Receipts ("ADR" or "ADRs") trade on the NYSE under the ticker symbol "BTI."

10.    Defendant Tadeu Marroco ("Marroco") has served as BAT's Chief Executive Officer ("CEO") since May 15, 2023 and was formerly the Company's Finance Director, or Finance & Transformation Director, from August 2019 until May 2023.

11.    Defendant Jack Marie Henry David Bowles ("Bowles") served as BAT's CEO from January 1, 2019 until May 15, 2023.

12.    Defendant Javed Iqbal ("Iqbal") has served as BAT's Interim Finance Director since May 15, 2023 and also serves as Director, Digital and Information.

13.    Defendants Marroco, Bowles, and Iqbal are collectively referred to herein as the "Individual Defendants."

14.    Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

15.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to BAT under *respondeat superior* and agency principles.

17.     Defendant BAT and the Individual Defendants are collectively referred to herein as "Defendants."

**<u>SUBSTANTIVE ALLEGATIONS</u>**
**Materially False and Misleading**
**Statements Issued During the Class Period**

18.     On February 9, 2023, BAT posted its "Preliminary Announcement – year ended 31

4

December 2022" (the "Preliminary Announcement") on its website, which laid out the Company's performance for 2022, and its vision for 2023.

19.    Defendant Bowles was quoted as saying the following:

Looking forward, ***while we expect the macro-economic environment to remain challenging, we will continue to deliver and further accelerate our transformation***. We will leverage ***our well-established multi-category brand portfolio***, our new regional structure to enable even greater collaboration and accelerated decision-making and our new market archetype model to guide our strategic choices and resource allocation to further enhance returns.

***I am confident in BAT's ability to deliver long-term sustainable value for our shareholders***.

(Emphasis added).

20.    This statement was materially false and misleading because it understated the extent to which BAT's Premium American Cigarette Brands, which it wholly acquired when it took over Reynolds, were under pressure due to competition from consumers switching to cheaper, non-premium, cigarettes.

21.    The Preliminary Announcement further stated that the Company's cigarette value share was "flat vs. 2021" and that cigarette volume was "down 5.1% at 605 billion sticks (2021:637 billion sticks)", which was driven by the following:

The U.S., where combustible volume was down 15.5% to 59 billion sticks (2021: 69.7 billion sticks) reflecting post COVID-19 normalisation of consumption patterns, and the continued pressure of growing macro-economic headwinds leading to some accelerated downtrading in the industry in key channels and states. [. . .]

22.     This statement was materially false and misleading because it omitted that the Premium American Cigarette Brands were at risk of being written down due to longstanding consumer consumption patterns and other general macro-economic pressures.

23.    In pertinent part, the Preliminary Announcement stated the following regarding

impairment of various BAT products that were classified as indefinite lived assets, which included the Premium American Cigarette Brands:

> Apart from Camel Snus, ***management concluded that no reasonably possible scenarios were identified that resulted in any of the indefinite-lived intangibles requiring an impairment charge***.

(Emphasis added).

24.     This statement was materially false and misleading at the time it was made because, as BAT knew, the market for its Premium American Cigarette Brands was shrinking in the United States, which called into question whether the Brands should be classified as having indefinite lives, and the overall value of the Brands.

25.     On March 2, 2023, the Company filed with the SEC its annual report on Form 20-F for the period ending December 31, 2022 (the "2022 Annual Report"). Attached to the 2022 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by defendants Bowles and Marroco attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

26.     The 2022 Annual Report preliminarily stated that the Premium American Cigarette Brands had performed "well" in 2022, despite the volume of Newport, Natural American Spirit, and Camel cigarettes going down by 17%, 9.2%, and 15.7%, respectively. The reason for this was that the value share for Newport, Natural American Spirit, and Camel were each positive.

27.     This statement was materially false and misleading because it understated the significant challenges facing the Brands, and did not put investors on notice that the Brands were at risk of being marked down.

28.      The 2022 Annual Report contained the following statement regarding the

Company's evaluation of market risks and required accounting impairments:

> ***Since 2018, having considered the combination of the risk of implementation and impact of any change in regulations, the Group has not recognised any impairment on either the Newport or Camel brands or the Reynolds American cash-generating unit***.

> \* \* \*

> The value-in-use calculations for brands [. . .] have been incorporated in the probability weighted scenarios used in the Reynolds American goodwill model. The value-in-use calculations have been prepared based on a five-year risk-adjusted cash flow forecast which assumes a long-term volume decline of cigarettes generally offset by pricing. ***After this forecast, a probability weighted growth rate of 1.05% has been assumed for the Reynolds American cash-generating unit, 0.89% for Newport, 0.93% for Camel, and 1.0% for all remaining indefinite life intangibles***.

> \* \* \*

> The change in revenue assumption is based on revenue in the five-year forecast reducing by the ***stated percentage in each year without any future recovery and assumes that other assumptions are not changed. Management concluded that such reduction would not be reasonably possible for either Reynolds American goodwill or the indefinite-lived intangibles***.

> As a result of a reduction in the excess of value-in-use earnings over the carrying values (headroom) on Reynolds American goodwill in 2022, reasonably possible changes to key assumptions, within the value-in-use model, could result in an impairment charge… [t]he chang in revenue assumption is based on revenue in the five-year forecast reducing by the stated percentage in each year without any future recovery and assumes that other assumptions are not changed. ***Management concluded that such reduction would not be reasonably possible for either Reynolds American goodwill or the indefinite-lived intangibles***.

> \* \* \*

> ***Apart from Camel Snus, management concluded that no reasonably possible scenarios were identified that resulted in any of the indefinite-lived intangibles requiring an impairment charge. However, it is noted that if adverse movement occurred in a combination of the above key assumptions for the Pall Mall brand intangible this may result in an impairment charge***.

(Emphasis added).

29.    This statement was materially false and misleading at the time it was made because the Company knew that the long-term value of its brands was impacted by a slew of factors, ranging from present macroeconomic issues leading to smokers choosing to buy cheap cigarettes

to the long-term downtrend in cigarette smoking in the United States, which would lead to the

Company taking a $31.5 billion impairment.

30.    Furthermore, in the 2022 Annual Report's regional review for the U.S., BAT stated

the following:

> Combustibles revenue was 4.5% higher in 2022 at £10,470 million (2021: up 0.9% to £10,015 million)[. . .].

> In 2021, cigarette volume decreased 5.0% to 70 billion sticks as the Group benefited from trade inventory movements (mainly linked to the timing of price increases and uncertainty about a potential excise Increase and which partially unwound in 2022), impacting revenue by an estimated £200 million.

> Industry volume was down 10% (2021: down 6%), driven by rising gas prices. inflation and macro-economic pressures impacting consumer disposable income. ***To offset early signs of accelerated downtrading, we have activated commercial plans in specific brands, channels, and states.***

> ***Value share of cigarettes increased 10 bps (2021: up 60 bps), driven by our strategic brands (up 10 bps) including Newport and Natural American Spirit. Total volume share declined 30 bps (2021: 40 bps decrease) as we continued to focus on value generation from combustibles in 2022.***

(Emphasis added)

31.    This statement was materially false and misleading because it overstated

BAT's ability to offset the issues facing the Brands.

32.    In the 2022 Annual Report, the Company stated the following about the effects of

competition and other macroeconomic issues on its business:

> Annual price increases by the Group are among the key drivers in increasing market profitability. However, the Group has in the past been, and may in the future be, unable to obtain such price increases as a result of increased regulation; increased competition from illicit trade; stretched consumer affordability arising from deteriorating political and ***economic conditions and rising prices; sharp increases or changes in excise structures; and competitor's pricing***.

(Emphasis added).

33.    This statement was materially false and misleading because it understated the

significant issues affecting its cigarette business, which would lead to a $31.5 billion impairment on the Premium American Cigarette Brands.

34.     Regarding impairment testing, the 2022 Annual Report stated the following about indefinite-lived intangibles, which included the Premium American Cigarette Brands, Pall Mall, Camel Snus, and Grizzly (Camel Snus and Grizzly are not cigarette products):

> Apart from Camel Snus, management ***concluded that no reasonably possible scenarios were identified that resulted in any of the indefinite-lived intangibles requiring an impairment charge***. However, it is noted that if adverse movement occurred in a combination of the above key assumptions for the Pall Mall brand intangible this may result in an impairment charge.

(Emphasis added).

35.     On July 26, 2023, BAT released its six month report for the period ending June 30, 2023 ( the "Half-Year Report") on its website. In the Half-Year Report, Defendant Marroco, now BAT's CEO, was quoted as saying the following:

> Having been in my new role for 10 weeks, I'm pleased with the resilient performance of BAT in the first half of 2023 and the renewed sense of energy across the organisation.
>
> It is a challenging external environment. High inflation and slower global growth are impacting consumers and business. Yet our revenue, profit from operations and earnings are all up.
>
>        *       *       *
>
> ***While more focus is required in the U.S., our sequential performance improvement in the critical premium U.S. combustibles business since January 2023 is encouraging***.

(Emphasis added).

36.     This statement was materially false and misleading at the time it was made because, contrary to Defendant Marroco's assurances, the Premium American Cigarette Brands were facing significant issues which would lead to a $31.5 billion impairment charge.

37.     The Half-Year Report contained the following statement regarding the Company's

impairment review and the risk of impairment facing the Brands:

> During 2023, macro-economic pressures intensified within the U.S. market resulting in higher than anticipated combustible volume declines in the first half of the year, especially in the premium segment. ***However, these impacts are expected to dissipate within the short-term, as the macro-economic pressures normalise, and therefore do not impact the longer term outlook for the Reynolds American Inc. ("Reynolds") CGU.*** Additionally, New Categories have continued delivering a strong performance, especially in Vapour with the potential for enforcement action on disposable synthetic nicotine vape products by the FDA, expected to bring further growth to the Group's U.S. Vapour business. ***While the Reynolds CGU is facing headwinds in 2023, Management has not identified an impairment trigger in relation to either the Reynolds CGU or its indefinite-lived brand intangibles.*** However, in relation to Camel Snus, while its performance in the first half of 2023 indicated no potential impairment triggers, Management continues to monitor its performance, given it remains highly sensitive to movements in key assumptions.

(Emphasis added).

38.   This statements was materially false and misleading because it materially understated the risk of an impairment to the Brands.

39.   The statements contained in ¶¶ 18, 19, 21, 23, 25-26, 28, 30, 32, 34, 35, and 37 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) British American Tobacco materially understated the risks and potential likelihood of an impairment to its Premium American Cigarette Brands as a result of various longstanding headwinds and; (2) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

40.   On December 6, 2023, BAT issued a press release announcing that it was taking a 25 billion Pound (or around $31.5 billion USD) impairment (the "Impairment") on the cigarette

brands it acquired from Reynolds. It stated, in relevant part:

> Consistent with our vision to 'Build a Smokeless World', and in combination with the ***current macro-economic headwinds impacting the U.S. combustibles industry, in 2023 we will take an accounting non-cash adjusting impairment charge of around £25bn.*** This accounting adjustment mainly relates to some of our ***acquired U.S. combustibles brands, as we now assess their carrying value and useful economic lives over an estimated period of 30 years***. Accordingly, we will commence amortisation of the remaining value of our U.S. combustibles brands from January 2024.

(emphasis added).

41.     That same day, on the BAT 2023 Second Half Pre-Close Trading Update Call, Defendant Marroco further stated, in reference to the Impairment that "***[t]he accounting is basically catching up with reality of the U.S. market."*** (Emphasis added).

42.     Marroco further indicated that American smokers could be using "New Categories" products (products that are purported to be less harmful than traditional cigarettes) instead of cigarettes, and that generally, "***it's very difficult to defend the existence of a finite [sic] value for some of these combustible brands in the U.S. that equates to almost GBP 80 billion in our balance sheet***. So what we have decided to [do] is basically to move the accounting treatment of some of these U.S. combustible brands from indefinite life to a finite life." (Emphasis added).

43.     He further stated, "***you cannot justify the value of those brands equating to a number as equivalent to what we have today in the balance sheet***." (Emphasis added). He also indicated that BAT was slow to take this impairment, stating, "***[s]o at a certain stage, we have to do this anyway and we decide to do this right now***." (Emphasis added).

44.     The BAT 2023 Second Half Pre-Close Trading Update Call included this exchange, in which Marroco admitted that BAT's challenges in the United States were longstanding:

> Question from Simon Hales, a Citigroup analyst: [. . .] I just want to go back to the U.S. Today you talked about obviously the industry combustible volumes declining high single digits this year. How do you think about the building blocks of that?

What do you think has been macro related? What's poly-usage?

What's just the underlying decline rate in the market? I'm just trying to understand the build and how we think about this for not only 2024, but perhaps longer term, what you're now assuming is the rate of decline of U.S. combustibles?

Defendant Marroco: ***You note that the secular decline in the U.S. market has always been around 4% to 5% for sure that the Covid years was an exception to that***. A lot of consumers with a lot of support from tax and federal and state tax and without having the opportunity to spend anything.

***So, we saw a very, I would say, unexpected trajectory for the positive that has reversed completely from 2022 onwards. But normally you would expect to see 4% to 5%. There is a big weight now related to the macroeconomics***[.]

(Emphasis added).

45.    That same day, *The Wall Street Journal* published an article entitled "BAT Takes

$31.5 Billion Charge on U.S. Cigarette Brands", which stated in relevant part:

[BAT] is booking a $31.5 billion charge to slash the value of its U.S. cigarette business, ***one of the biggest corporate write-offs in recent history***.

The accounting charge, largely stemming from its 2017 takeover of the U.S. maker of Newports and Camels, falls short of the value erased by the failed merger of AOL and Time Warner.

BAT spend $49 billion six years ago to take full control of U.S. tobacco company Reynolds American. In the face of an accelerating decline in cigarette smoking, BAT and other tobacco giants have been trying in recent years to pivot to cigarette alternatives such as e-cigarettes and heated tobacco devices.

\*      \*      \*

BAT, whose portfolio includes Newport, the leading U.S. menthol brand, Kent, Dunhill and Lucky Strike, ***said its performance in the U.S. had been hindered by smokers switching to cheaper, nonpremium brands*** and a rise in illegal disposable vapes.

Citing macroeconomic pressures on its traditional cigarette business and its plan to invest more in its so-called noncombustibles business, the London-listed company said Wednesday that it would book an accounting charge of around £25 billion this year. BAT has a market value of around £50 billion.

The company said the charge mainly relates to U.S. brands it acquired, as it assesses their carrying value and economic usefulness in the years to come.

BAT paid more than $49 billion in cash and stock that year for the nearly 58% of Reynolds it didn't already own. BAT had been a Reynolds shareholder since 2004, when BAT's U.S. unit Brown & Williamson merged with R.J. Reynolds to create Reynolds American.

(Emphasis added.)

46.     Also on December 6, 2023, Reuters published an article entitled "BAT's US writedown puts tobacco transition in spotlight." The article stated the following:

> *[BAT's] admission that its U.S. cigarette brands will be worthless within decades* has ramped up pressure on the company to prove it can better compete in alternatives like vapes.
>
> Earlier on Wednesday, BAT put a 30-year lifetime on some U.S. tobacco brands' value, taking a $31.5 billion noncash impairment. *The move marked the first time a tobacco company has acknowledged that hugely profitable brands have no economic future*.

(Emphasis added.)

47.     On this news, British American's ADR price fell $2.68 per share, or 8.88%, to close at $28.86 per ADR on December 6, 2023.

48.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and

their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

50.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

51.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

55.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NYSE, an efficient market;

- as a public issuer, the Company filed periodic public reports;

- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

15

- the Company's ADRs were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

56.     Based on the foregoing, the market for the Company's ADRs promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

57.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

<u>**COUNT I**</u>
**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder**
<u>**Against All Defendants**</u>

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60.      During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

61.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

62.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

63.      Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the

statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

64.     As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

65.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

66.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

67.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

68.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

70.     As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

71.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

72.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

### **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: 1/24/2024                          **THE ROSEN LAW FIRM, P.A.**
                                          /s/ Phillip Kim
                                          Phillip Kim, Esq.
                                          Laurence M. Rosen, Esq.
                                          275 Madison Avenue, 40th Floor
                                          New York, NY 10016
                                          Telephone: (212) 686-1060
                                          Fax: (212) 202-3827
                                          Email: pkim@rosenlegal.com
                                                  lrosen@rosenlegal.com

                                          *Counsel for Plaintiff*