UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————————— x

GARY DAVID, Individually and on Behalf of
All Others Similarly Situated,

                            Plaintiff,

      vs.

BRITISH AMERICAN TOBACCO P.L.C.,
JACK MARIE HENRY DAVID BOWLES,
TADEU MARROCO, and JAVED IQBAL,

                        Defendants.

—————————————————————— x

Civil Action No. 1:24-cv-00517-AMD-MMH

<u>CLASS ACTION</u>

BRETT A. DOYLE AND LOGIX LLC'S
OPPOSITION TO COMPETING LEAD
PLAINTIFF MOTIONS

4867-8777-5668.v1

## I.   INTRODUCTION

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), courts are to "adopt a presumption that the most adequate plaintiff" to be appointed as lead plaintiff is the person that "has the largest financial interest in the relief sought by the class" *and* "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Of the five motions filed for appointment as lead plaintiff in this case, only one satisfies *both* requirements: Brett A. Doyle and Logix LLC ("Mr. Doyle").

Indeed, while Jean Lee claims a larger loss than Mr. Doyle, the facts before the Court – namely Ms. Lee's submission of two separate (yet competing) motions with two separate law firms and the conflicting information submitted under penalty of perjury in the two certifications executed by Ms. Lee and submitted with those respective motions, including the size of her financial interest, casts doubt as to Ms. Lee's diligence and ability to adequately lead a class of thousands of harmed investors.[1]  Consequently, her motion should be denied.

In contrast, Mr. Doyle has a significant loss that has not been self-contradicted under penalty of perjury and he readily satisfies Rule 23 requirements.  Because Mr. Peters and Mr. Trautmann claim to have significantly smaller financial interests than that of Mr. Doyle and cannot prove that Mr. Doyle should not be appointed, their motions should be denied and Mr. Doyle's should be granted.[2]

---

[1]   Jean H. Lee claims losses of $181,907; Jean Lee claims $170,200; Mr. Doyle claims $68,813; Brian Peters claims $41,978; and Dean Trautmann claims $9,452.

[2]   On March 28, 2024, Brian Peters filed a notice of non-opposition to competing lead plaintiff motions.  ECF 22.  On April 8, 2024, Dean Trautmann withdrew his motion.  ECF 23.

## II.    ARGUMENT

### A.    Ms. Lee's Multiple Motions Evidence an Inability to Adequately Represent the Class

No proof is more evident of Ms. Lee's inadequacy to lead the class than her head-scratching decision to file two motions with two separate law firms, thereby filing competing motions ***against herself***.  *See* ECF 12 ("Rosen Motion") (Ms. Lee moving for appointment as lead plaintiff and approval of The Rosen Firm, P.A. as lead counsel); ECF 18 ("Pomerantz Motion") (Ms. Lee moving for appointment as lead plaintiff and approval of Pomerantz LLP as lead counsel).  Indeed, after executing a sworn certification on February 13, 2024, in support of her Pomerantz Motion, she followed that up by signing a sworn declaration on March 7, 2024, that, among other things, purported to "approve[] Pomerantz as [Ms. Lee's] Lead Counsel."  ECF 18-7 at 1.  Just two weeks later, on March 21, 2024, Ms. Lee appeared to have a change of heart when she executed another sworn certification, this time "authoriz[ing] The Rosen Law Firm, P.A. to file a lead plaintiff motion on [her] behalf."  ECF 13-2 at 2 of 3.  It is unclear why, after "discuss[ing] this case with an attorney from Pomerantz" and "direct[ing] [Pomerantz] to prosecute this action in an efficient, cost-effective manner" (ECF 18-7 at 1, 3), Ms. Lee turned about and authorized Rosen to file an addition motion on her behalf.  What is clear is that regardless of the reasons or motives behind Ms. Lee's nonsensical maneuver, "[s]uch a blatant gaffe does not bode well for the adequacy of [Ms. Lee] to lead this litigation."  *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (finding group of lead plaintiff movants inadequate where one member of the group filed a second, competing motion).[3]

---

[3]    The most basic requirements to file a valid motion for appointment as lead plaintiff under the PSLRA are: (1) filing of a sworn certification with the motion (*see* 15 U.S.C. §78u-4(a)(2)(A)); and, (2) selection and retention of counsel to represent the class (*see* 15 U.S.C. §78u-4(a)(3)(B)(v)).  Ms.

- 2 -

Even under significantly less egregious circumstances, courts have declined to overlook such out-the-gate stumbles by individual investors seeking to serve as lead plaintiff, finding that they risk being "unsuitable to make decisions on behalf of the class." *Singer v. Nicor, Inc.*, 2002 WL 31356419, at \*2 (N.D. Ill. Oct. 17, 2002) ("The court views this 'mis-communication' as a more serious problem, however. Woodley Farra's unknowing retention of two different law firms and filing of two motions for appointment as lead plaintiff reveal conflicts within Woodley Farra that make it unsuitable to make decisions on behalf of the class."); *see also Pardi v. Tricida, Inc.*, 2021 WL 1381271, at \*2 (N.D. Cal. Apr. 2, 2021) (finding that a lead plaintiff movant "does not meet the adequacy requirement of Federal Rule of Civil Procedure 23(a)" where one member of that movant group "filed a competing individual motion with different counsel"); *McDermid v. Inovio Pharms., Inc.*, 467 F. Supp. 3d 270, 279-80 (E.D. Pa. 2020) (refusing to appoint lead plaintiff movant group where one of its members individually filed a dueling lead plaintiff motion with another law firm and noting that "the Inovio Group seems to concede that Stefko's conduct renders him inadequate"); *Syntax-Brillian*, 2008 WL 942273, at \*4 ("In his sworn declaration, McCullough states that he sent his lead-plaintiff certification to the wrong firm 'in error.' Such a blatant gaffe does not bode well for the adequacy of his group to lead this litigation.").[4]  This is because "[a] class representative, once designated by the Court, is a fiduciary for the absent class member." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998).  "He sues, not for himself alone, but also to advance and protect the interests of all who are similarly situated, whose interests in the 'redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity.'"

---

Lee's inability to comply with such simple instructions at the very outset of this case calls into question the representation the class would receive from Ms. Lee as lead plaintiff.

[4]    Unless otherwise noted, all emphasis is added and citations are omitted.

*Villare v. ABIOMED, Inc.*, 2020 WL 3497285, at *6 (S.D.N.Y. June 29, 2020) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949)).  As such, in evaluating a movant's adequacy, "[c]ourts must also consider such factors as 'the available resources and experience of the proposed lead plaintiff,' in order to ensure the plaintiff can 'act like a "real" client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price.'" *Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57, 63 (S.D.N.Y. 2022).[5]

Ms. Lee's submission of two competing motions proposing two separate law firms as lead counsel clearly evidences a lack of diligence and experience necessary to capably and adequately oversee counsel and lead the class and is, standing alone, grounds to deny her motion.

### B.        Inconsistencies in Ms. Lee's Certifications Further Undermine Her Adequacy

Further buttressing Ms. Lee's inadequacy, she submitted inconsistent sworn certifications[6] to the Court, including at least one that is unquestionably false.  Ms. Lee submitted two sworn certifications: one with her Rosen Motion and one with her Pomerantz Motion.  ECF 13-2 ("Rosen Cert."); 18-6 ("Pomerantz Cert.").  In each, she declared under penalty of perjury that the certification's contents were true and correct and appended "*all*" of her purported transactions in British American Tobacco securities during the Class Period.  Rosen Cert. at 2 of 3 ("The following

---

[5]    Indeed, "courts fulfill a "'gatekeeping function" in class action litigation.'" *Schaffer v. Horizon Pharma Plc*, 2016 WL 3566238, at *1 (S.D.N.Y. June 27, 2016); *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 215 (D.D.C. 1999) ("Congress envisioned that courts still would play an independent, gatekeeping role to implement the PSLRA."); *see also Bosch v. Credit Suisse*, 2022 WL 4285377, at *6 (E.D.N.Y. Sept. 12, 2022) (recognizing that even where a motion for lead plaintiff is unopposed, the court plays an independent gatekeeping function to ensure the PSLRA's requirements are met).

[6]    Under the PSLRA, applicants for lead plaintiff must provide a "sworn certification" that, among other things, "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. §78u-4(a)(2)(A)(iv).

is a list of all of the purchases and sales I have made in British American Tobacco p.l.c securities during the Class Period set forth in the complaint. I have made no transactions during the class period in the securities that are the subject of this lawsuit except those set forth below."); Pomerantz Cert. at 2 of 5 ("The attached sheet lists all of my transactions in BTI securities during the Class Period as specified in the Complaint.").

Curiously, the certifications contain two notable inconsistencies: (1) the Pomerantz Cert. includes transactions from Ms. Lee's "Account 2" that do not appear on the Rosen Cert.; and (2) the share prices Ms. Lee claims to have received in her sales transactions differ between the two certifications. Ms. Lee's respective loss charts contain the same inconsistencies. ECF 13-3; 18-4. Indeed, Ms. Lee presented two loss figures to the Court that differed by ***more than $10,000***, claiming to have lost $181,907.30 in her Rosen Motion, while only claiming to have suffered losses of $170,200 in her Pomerantz Motion. ECF 13 at 5; 18-2 at 8. While it is unclear why Ms. Lee's purported loss differs between the motions, one thing is certain: ***at least one of Ms. Lee's sworn certifications is not "true and correct*.**" Such a blatant inconsistency suggests (at a minimum) an inattention to detail and deference to counsel inconsistent with the PSLRA's lead plaintiff provisions.

4867-8777-5668.v1

|  | *Lax #1*[7] | *Lax #2* | *Lax #3* | *Lax #4* |  |  |  |
| Movant | Total Shares Purchased | Net Shares Purchased | Net Funds Expended | Loss (Claimed) | Total Accounts | Total Transactions | Counsel Selected |
|---|---|---|---|---|---|---|---|
| Jean H. Lee (Rosen Motion) | 109,043 | 37,063 | $1,292,420 | $181,907 | 1 | 44 | Rosen |
| Jean Lee (Pomerantz Motion) | 109,702 | 37,201 | $1,279,968 | $170,200 | 2 | 54 | Pomerantz |

While it is true that "'the goal of the PSLRA was not to select [lead plaintiffs] who make no mistakes,'" Ms. Lee's "error struck at the core of the PSLRA's lead inquiry: determining which movant holds the largest financial stake in the litigation." *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019).[8]  And while Ms. Lee's remaining counsel will likely

---

[7]   "In determining who has the largest financial stake in the litigation, courts in this Circuit have traditionally applied a four-factor test, first set forth in *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).  These *Lax* factors include: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered."  *Garnett v. RLX Tech. Inc.*, 2021 WL 3913541, at *4 (S.D.N.Y. Aug. 31, 2021).

[8]   *See also LifeStance*, 641 F. Supp. 3d at 64 (refusing to appoint movant with the largest financial interest and finding that "[e]ven if Ms. Jordan did not personally prepare the pages that misspelled her name, her failure to correct the misspelling prior to filing indicates a certain lack of care or diligence on her part"); *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) ("As have other courts in this District presented with similar sloppiness, this Court finds that Kaintz's careless errors weigh heavily against his appointment as lead plaintiff."); *Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, 2021 WL 533518, at *4 (S.D. Cal. Feb. 12, 2021) ("Even more, in Li's opposition brief, she revealed for the first time that in addition to representation by Pomerantz LLP, she is also currently represented by The Schall Law, a fact which was apparently inadvertently omitted from her motion due to a clerical error. Whether the error was indeed inadvertent, this omission and lack of attention to detail calls into question the ability of Li to adequately serve as Lead Plaintiff in a class action."); *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (finding that "[a]lthough Meitav submits that this clerical error was a 'minor defect[ ],' this error 'nonetheless speak[s] to a level of carelessness,' and causes me 'to doubt whether [Meitav] possesses the necessary adequacy and sophistication to be lead

- 6 -

attempt to minimize the inconsistencies as a minor mistake or a clerical error, that would ignore the concerning sequence of events that had to transpire for such inconsistencies to have occurred in the first place. "One of two things happened here: either [Ms. Lee] reviewed the loss charts and neglected to correct them despite errors that should have been obvious to [her] based on [her] own trading, or [she] didn't review the loss charts at all." *In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020). "Under either scenario, [her] failure to discover these obvious errors independently warrants a determination that [Ms. Lee] will not be [an] adequate representative[] of the class." *Id.* (collecting cases).[9] Thus, the errors in Ms. Lee's certifications, regardless of whether she classifies them as "inadvertent," are an additional and independent ground to deny her motion.

It is evident that Ms. Lee lacks the diligence, attentiveness, and sophistication to adequately lead a class of potentially thousands of class members. Her motion should be denied.

---

plaintiff'"); *Li Hong Cheng v. Canada Goose Holdings Inc.*, 2019 WL 6617981, at *6 n.7 (S.D.N.Y. Dec. 5, 2019) (disqualifying movant who failed to list a case in which he sought lead plaintiff status in his PSLRA certification, finding that "[e]ven if [movant] had the largest financial interest in this action, I find that '[t]he certification errors in [movant's] submissions "militate against appointment and render [him] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement."'"); *Bhojwani v. Pistiolis*, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (finding that discrepancies in certification "indicate[] a certain carelessness about detail that undermines the adequacy of [the movant] as a lead plaintiff").

[9]    Ms. Lee's remaining counsel will likely further argue that her still pending Pomerantz Motion contains the "correct" certification and she should not be penalized because Ms. Lee's motion containing the "incorrect" certification was withdrawn (*see* ECF 21). But that is of no moment as it is the entirety of Ms. Lee's actions up to this point that render her inadequate to lead the class. *See DraftKings*, 2021 WL 5282006, at *9 ("Had [Ms. Lee] been serious about h[er] responsibilities as a budding class representative, [s]he should not have had to have been alerted to these basic errors in the first place.").

4867-8777-5668.v1

**C.     The Most Adequate Plaintiff Presumption Which Lies in Mr. Doyle's Favor Cannot Be Rebutted**

In contrast, Mr. Doyle, the movant with the next largest loss, filed one motion with one law firm. Mr. Doyle's trading records were independently reviewed by counsel to ensure the veracity of his submissions to the Court. As set forth in his Declaration, Mr. Doyle has nearly 17 years of investing experience as well as familiarity with selecting and overseeing counsel. There is no question that Mr. Doyle's claims are typical and he will adequately represent the class in this matter. *See* ECF 15 at 4-5. Thus, Mr. Doyle is entitled to presumption that he is the most adequate plaintiff. Because no movant can provide the "proof" necessary to rebut the presumption in his favor, his motion should be granted. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

**III.     CONCLUSION**

Ms. Lee has failed to make even a preliminary showing that she satisfies the requirements of Rule 23. Because Mr. Doyle has the next largest financial interest, otherwise satisfies the requirements of Rule 23, and there has been no proof submitted to rebut the presumption in his favor, Mr. Doyle's motion should be granted.

DATED: April 8, 2024          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

s/ David A. Rosenfeld
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff