UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GARY DAVID, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>BRITISH AMERICAN TOBACCO P.L.C.,<br>JACK MARIE HENRY DAVID BOWLES,<br>TADEU MARROCO, and JAVED IQBAL,<br><br>     Defendants. | Case No.  1:24-cv-00517-AMD-MMH |

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION
OF JEAN LEE FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF LEAD COUNSEL

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .................................................................................................................... 4

    I.    THE FILING OF TWO SEPARATE MOTIONS ON LEE'S BEHALF
        DOES NOT RENDER HER INADEQUATE .......................................................... 4

    II.    INCONSISTENCIES IN LEE'S WITHDRAWN CERTIFICATION DO
        NOT STRIKE AT THE HEART OF RULE 23'S ADEQUACY INQUIRY ........ 7

CONCLUSION .................................................................................................................. 9

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
  17-CV-10085, 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ........................................................1

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ...........................................................................................2

*In re Boeing Co. Aircraft Sec. Litig.*
  No. 19-CV-02394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020)..................................................9

*In re Spero Therapeutics, Inc. Sec. Litig.*,
  No. 22CV3125LDHRLM, 2022 WL 4329471 (E.D.N.Y. Sept. 19, 2022) ...................3, 7, 8, 9

*Janbay v. Canadian Solar, Inc.*,
  272 F.R.D. 112 (S.D.N.Y. 2010) ...........................................................................................2

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ............................................................................................1

*Karp v. Diebold Nixdorf, Inc.*,
  No. 19 CIV. 6180(LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019)..................................9

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015)........................................................................... *passim*

*McDermid v. Inovio Pharms., Inc.*,
  467 F. Supp. 3d 270 (E.D. Pa. 2020) .....................................................................................5

*Pardi v. Tricida, Inc.*,
  No. 21-CV-00076-LHK, 2021 WL 1381271 (N.D. Cal. Apr. 2, 2021) ...................................5

*Reitan v. China Mobile Games & Ent. Grp., Ltd.*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014)......................................................................................4

*Siegel v. Bos. Beer Co., Inc.*,
  No. 21-CV-7693 (VSB), 2021 WL 5909133 (S.D.N.Y. Dec. 14, 2021)..................................7

*Singer v. Nicor, Inc.*,
  No. 02 C 5168, 2002 WL 31356419 (N.D. Ill. Oct. 17, 2002) ............................................5, 6

*Tsirekidze v. Syntax–Brillian Corp.*,
  No. CV–07–2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ..........................................4, 5, 6

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

Lead Plaintiff Movant Lee[1] respectfully submits this reply memorandum of law in further support of her motion for appointment as Lead Plaintiff and approval of her selection of Pomerantz as Lead Counsel (Dkt. No. 18); and in opposition to the competing motion of Doyle (Dkt. No. 14).

**PRELIMINARY STATEMENT**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii). The movant that has the largest financial interest must only make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23. *Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 WL 1634872, at \*3-4 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). Once this presumption is triggered, it can only be rebutted by "proof" that the movant with the largest financial interest is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, no one disputes that Lee, having suffered a loss of $170,200 as a result of the fraud alleged in this Action, is the movant with the largest financial interest. Lee's investment loss is more than ***$100,000***, or over ***50%***, larger than the approximate $68,814 investment loss that Doyle, the only competing movant, claims to have incurred. Moreover, as discussed in greater detail in her opposition brief (Dkt. No. 24 at 6-10), Lee has made a *prima facie* showing of typicality and adequacy under Rule 23 because her claims in this Action are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, her significant financial interest gives her a sufficient stake in the outcome of this litigation to ensure vigorous advocacy

---

[1] All capitalized terms herein are defined in Lee's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 18-2, 24.

on behalf of the Class, she is aware of no conflict between her interests and those of the Class, and she has selected counsel highly capable and experienced in prosecuting securities fraud cases and managing complex litigation efficiently to serve as Lead Counsel for the Class. *See Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011). Lee has also submitted two Declarations in support of her motion to date that further buttress her adequacy—namely, the first Declaration submitted with her initial motion papers, providing detailed background information about herself and attesting to her understanding of the responsibilities of a lead plaintiff appointed pursuant to the PSLRA (*see* Dkt. No. 18-7 ¶¶ 1-7, 9-11), and a Supplemental Declaration with her opposition brief, explaining, *inter alia*, the circumstances under which two motions were filed on her behalf for appointment as Lead Plaintiff, her selection and retention of Pomerantz as her proposed Lead Counsel, and the withdrawal of the duplicative motion filed on her behalf (Dkt. No. 24-2 ¶¶ 2-5, 7). Accordingly, having alleged the largest financial interest of any movant and demonstrated her typicality and adequacy within the meaning of Rule 23, Lee is plainly the presumptive "most adequate plaintiff"—*i.e.*, the presumptive Lead Plaintiff of the Class—under the PSLRA's criteria.

Opposing Lee's motion, Doyle disputes her adequacy under Rule 23, claiming that certain errors in Lee's filings "cast[] doubt as to Ms. Lee's diligence and ability to adequately lead" the Class in this Action, citing the filing of two separate motions on Lee's behalf by different counsel, as well as the fact that one of the Certifications filed on Lee's behalf contained an inaccurate and incomplete history of all of her Class Period transactions in BAT securities. Dkt. No. 25 ("Doyle Opp.") at 1. Yet courts in the Second Circuit have held that such errors are either relatively minor or "do not strike at the heart of Rule 23's adequacy requirement." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538-39 (S.D.N.Y. 2015). Where, as here, the submission of two motions

2

was done in a manner that reflects a movant's motivation and desire to serve as class representative, this "show[s] nothing other than that [Lee] is an eager—if perhaps a little *over* eager—lead plaintiff" as opposed to an inability to adequately retain and oversee counsel as required by Rule 23. *Id.* at 537 (rejecting arguments against a lead plaintiff movant's adequacy where movant "admitted that he filed two competing applications [with two separate law firms] in the hopes that it would increase his chance of being appointed lead plaintiff," finding these arguments "a tempest in a teacup" and appointing said movant lead plaintiff).

Meanwhile, the submission of inaccurate trading history with one of her two Certifications (Dkt. No. 13-2), which omitted one of her two accounts containing the securities at issue in this Action, is a relatively minor error, which Lee quickly remedied by having the defective Certification withdrawn, while her accurate Certification (the "Pomerantz Certification") (Dkt. No. 18-6), which lists all of her accurate transactions in the BAT securities that are the subject of this Action, remains. *See* Dkt. No. 24-2 ¶¶ 6-7. As such, the errors are "not the kind . . . that courts in this Circuit typically view as demonstrating a movant's inadequacy to serve as lead plaintiff", especially where, as here, the "mistakes do not prejudice any party to this litigation or the . . . other movant[s]" and "[n]or is there any evidence of bad faith or an intent to deceive." *In re Spero Therapeutics, Inc. Sec. Litig.*, No. 22CV3125LDHRLM, 2022 WL 4329471, at *8-9 (E.D.N.Y. Sept. 19, 2022); *see also Khunt*, 102 F. Supp. 3d at 538-39 ("[M]inor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement." (internal quotation marks and citation omitted)). Indeed, no other party or movant was prejudiced by the errors in Lee's withdrawn Certification (Dkt. No. 13-2) for the same reason that there is no evidence of bad faith or intent to deceive—namely, Lee "provided Pomerantz with all of [her] transactions in the . . . securities that are the subject of this Action, all of which are accurately

3

reflected in the two accounts noted in the transaction history appended to [the] Pomerantz Certification." Dkt. No. 24-2 ¶ 6; *see also* Pomerantz Certification at *4-5.

For the foregoing reasons, Lee respectfully requests that the Court grant her motion in its entirety and deny Doyle's competing motion.

**ARGUMENT**

**I.    THE FILING OF TWO SEPARATE MOTIONS ON LEE'S BEHALF DOES NOT RENDER HER INADEQUATE**

Doyle argues that Lee is an inadequate class representative under Rule 23 because two separate motions for appointment as lead plaintiff were filed on her behalf by two different law firms. *See* Doyle Opp. at 2-4. Doyle is wrong. The errors at issue do not reflect poor oversight of counsel by Lee, but rather evidence her motivation to serve as Lead Plaintiff. Indeed, this "show[s] nothing other than that [movant] is an eager—if perhaps a little *over* eager—lead plaintiff." *Khunt*, 102 F. Supp. 3d at 537. Courts in the Second Circuit have found lead plaintiff movants to be adequate under similar circumstances. *See id.* (rejecting arguments against a lead plaintiff movant's adequacy where movant "admitted that he filed two competing applications [with two separate law firms] in the hopes that it would increase his chance of being appointed lead plaintiff," finding these arguments "a tempest in a teacup" and appointing said movant lead plaintiff); *see also Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 400 n.6 (S.D.N.Y. 2014) (rejecting argument that duplicative lead plaintiff motions "would bar [movant] from consideration" under the PSLRA and appointing said movant as lead plaintiff).

The out-of-circuit cases on which Doyle relies are easily distinguished, as they variously involved a movant ***accidentally*** filing duplicative motions or demonstrated a movant group's lack of cohesion. For example, in *Tsirekidze v. Syntax–Brillian Corp.*, the court rejected a group's motion for appointment as lead plaintiff because one member of the group had "sent his lead-

4

plaintiff certification ***to the wrong firm in error***" (not to mention that same group member was "a high-volume day trader [that] might be subject to [a] unique defense"). No. CV–07–2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (emphasis added). Likewise, in *Singer v. Nicor, Inc.*, the court found that an institutional movant's "***unknowing*** retention of two different law firms and filing of two motions for appointment as lead plaintiff reveal conflicts within [the institution] that make it unsuitable to make decisions on behalf of the class." No. 02 C 5168, 2002 WL 31356419, at *1 (N.D. Ill. Oct. 17, 2002) (emphasis added). In *Pardi v. Tricida, Inc.*, the court found that "the Tricida Investor Group highlighted its ***lack of cohesion*** when one of its members . . . filed a competing individual motion with different counsel" and that "[t]he filing of competing motions 'clearly evidence[s]' ***lack of cohesion***." No. 21-CV-00076-LHK, 2021 WL 1381271, at *2 (N.D. Cal. Apr. 2, 2021) (emphases added and alteration in original) (quoting *Tsirekidze*, 2008 WL 942273, at *5). Likewise, in *McDermid v. Inovio Pharms., Inc.*, an individual filed a motion as part of a group and then a duplicative motion with another law firm on his individual behalf. 467 F. Supp. 3d 270, 279-80 (E.D. Pa. 2020). Although the movant with duplicative motions, "Stefko[,] promptly withdrew his individual motion, . . . neither the Group nor Stefko himself . . . explained to the Court why he filed competing motions," the "Group seem[ed] to concede that Stefko's conduct render[ed] him inadequate[,]" "claiming that his decision should not taint the rest of the group[,]" and thus the court found that "Stefko's multiple motions betray ***a lack of cohesion***, and the Group's eleventh-hour willingness to discard Stefko completes the betrayal." *Id.* (emphasis added).

In contrast to Doyle's inapposite, out-of-circuit authority, Lee respectfully submits that the Honorable Colleen McMahon's decision in *Khunt*—another PSLRA case within the Second Circuit and decided on strikingly similar facts—is instructive. There, as here, duplicative motions

5

were filed by two different law firms on behalf of essentially the same movant for appointment as lead plaintiff, with one law firm filing a motion on behalf of an individual named William Tai ("Tai") and another law firm filing a competing motion on behalf of a company called Christine Asia Co., Ltd. ("CAC"), which Tai wholly owned and of which Tai was the sole director. *Khunt*, 102 F. Supp. 3d at 529. There, as here, the competing movants "attack[ed] Tai and CAC's adequacy . . . focus[ing] on the fact that Tai and CAC are controlled by the same person, who initially retained two separate law firms to file separate motions for lead plaintiff status", while "accus[ing] Tai and CAC of, at the very least, confusion as to the function and purpose of the lead plaintiff." *Id.* at 536-37. Judge McMahon distinguished the situation before her from *Tsirekidze*, which the competing movant in *Khunt* and Doyle's counsel relies on here, finding it was not a "gaffe" but rather "a strategic miscue" because "Tai answer[ed] that, in his zeal to be Lead Plaintiff, he made a regrettable mistake [of retaining two law firms] that he will not repeat." *Id.* Accordingly, Judge McMahon "view[ed] this [issue] as a tempest in a teacup" that "show[s] nothing other than that Tai is an eager—if perhaps a little *over* eager—lead plaintiff." *Id.* at 537.

Here, as in *Khunt*, Lee did not make a "blatant gaffe" by sending a certification "to the wrong firm in error" (*Tsirekidze*, 2008 WL 942273, at *4) or "unknowing[ly] ret[ain]" two law firms (*Singer*, 2002 WL 31356419, at *1)—rather, this was "a strategic miscue" (*Khunt*, 102 F. Supp. 3d at 536) whereby Lee purposefully filed duplicative motions "with two law firms [to] better secure and serve [her] application for appointment as Lead Plaintiff" (Dkt. No. 24-2 ¶ 5), in the erroneous but good-faith belief that the filing of two motions was better than one. *Khunt*, 102 F. Supp. 3d at 536. After Lee was advised that "having two competing motions filed on [her] behalf by two different law firms could jeopardize [her] Lead Plaintiff Motion", she confirmed that she "still wanted to proceed with Pomerantz as [her] designated Lead Counsel" and promptly

6

caused her duplicative motion to be withdrawn.  Dkt. No. 24-2 ¶ 7.  As in *Khunt*, "[Lee] admits that [s]he made a mistake.  [Sh]e rectified it.  [Sh]e seems to care very much about obtaining relief in light of the substantial losses [s]he . . . suffered.  H[er] interests are fully aligned with those of the class." *Khunt*, 102 F. Supp. 3d at 537.  Accordingly, although Doyle "insinuate[s] much from [Lee]'s mistake," this "show[s] nothing other than that [Lee] is an eager—if perhaps a little *over* eager—lead plaintiff" movant.  *Id.*

Moreover, Lee is not part of group nor an institution and, as such, her duplicative motion raises no concerns about a "lack of cohesion," as was the case in *Pardi* and *McDermid*, because she only seeks her own appointment as Lead Plaintiff.  Moreover, unlike the movant in *McDermid*, Lee **has** explained to the Court why she filed duplicative motions.  *See* Dkt. No. 24-2 ¶ 5.

In sum, the filing of duplicative motions on Lee's behalf plainly does not render her inadequate under Rule 23.

## II.   INCONSISTENCIES IN LEE'S WITHDRAWN CERTIFICATION DO NOT STRIKE AT THE HEART OF RULE 23'S ADEQUACY INQUIRY

Doyle's argument that inconsistencies in Lee's Certifications render her an inadequate class representative also fails.  "[M]inor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement." *Khunt*, 102 F. Supp. 3d at 538-39 (internal quotation marks omitted); *see also Spero*, 2022 WL 4329471, at *8 (finding mistakes in movant's transactions listed in sworn Certification "are relatively minor" and "not the kind of errors that courts in th[e Second] Circuit typically view as demonstrating a movant's inadequacy to serve as lead plaintiff"); *Siegel v. Bos. Beer Co., Inc.*, No. 21-CV-7693 (VSB), 2021 WL 5909133, at *8 (S.D.N.Y. Dec. 14, 2021) ("[Competing movant] Group argued that [movant]'s motion should be denied as inadequate because he listed incorrect dates for four transactions . . . . I am not troubled by the errors.").  This is especially true where, as here, the "mistakes do not

7

prejudice any party to this litigation or the . . . other movant[s]" and "[n]or is there any evidence of bad faith or an intent to deceive." *Spero*, 2022 WL 4329471, at *9.

Here, although Doyle makes much of the fact that "Ms. Lee presented two loss figures to the Court that differed by ***more than $10,000***, claiming to have lost $181,907.30 in her" withdrawn motion, "while only claiming to have suffered losses of $170,200 in her Pomerantz Motion" (Doyle Opp. at 5 (emphasis in original)), this only represents an error of approximately 6.88%. Moreover the "mistakes [in Lee's withdrawn Certification] do not prejudice any party to this litigation or the . . . other movant[s]", "[n]or is there any evidence of bad faith or an intent to deceive" (*Spero*, 2022 WL 4329471, at *9), and so the "'minor or inadvertent mistakes made in [Lee's] sworn certification do not strike at the heart of Rule 23's adequacy requirement.'" *Khunt*, 102 F. Supp. 3d at 538-39. In particular, no other party or movant was prejudiced by the errors in Lee's withdrawn Certification (Dkt. No. 13-2) for the same reason that there is no evidence of bad faith or intent to deceive—namely, Lee "provided Pomerantz with all of [her] transactions in the . . . securities that are the subject of this Action, all of which are accurately reflected in the two accounts noted in the transaction history appended to [the] Pomerantz Certification." Dkt. No. 24-2 ¶ 6; *see also* Pomerantz Certification at *4-5. Accordingly, the motion presenting Lee's defective Certification was promptly withdrawn (*see* Dkt. No. 21) and the Certification submitted in connection with the motion filed by the firm she ultimately wanted to retain, Pomerantz, was always correct, thus rendering the defective Certification meaningless.

The cases upon which Doyle relies all involved situations where either: (i) multiple, ***significant*** issues with movants' submissions rendered them inadequate and/or atypical; (ii) the errors only highlighted the deficiency of a lead plaintiff movant already found to be inadequate due to unrelated issues; or (iii) the movants failed to catch and/or correct their errors long after the

8

submission of their initial motion papers.  For example, in *Karp v. Diebold Nixdorf, Inc.*, the court found that the dearth of information that a movant group had provided about itself, the "exaggerated loss totals originally submitted by" this movant group that "represented no slight error . . . [but rather] an error of some 34%", and the fact "that it took [this movant group] nearly two weeks to supply corrected figures", "[t]aken together, . . . indicate[d] to the Court a certain carelessness about detail that undermine[d] the adequacy of" this movant group.  No. 19 CIV. 6180(LAP), 2019 WL 5587148, at *5-6 (S.D.N.Y. Oct. 30, 2019) (internal quotation marks omitted).  Likewise, *In re Boeing Co. Aircraft Sec. Litig.* also centered on the dearth of information a movant group provided about themselves, with the *Boeing* court denying that group's motion for reconsideration on their failed lead plaintiff motion because, "by offering only . . . meager and implausible information in support of their application, the [movant group] had raised so many red flags that the Court could not in good conscience appoint them[.]"  No. 19-CV-02394, 2020 WL 476658, at *2 (N.D. Ill. Jan. 28, 2020) (internal quotation marks omitted).  Although the *Boeing* court ***did*** take issue with inaccurate trade histories provided in the movant group's original submissions, the crux of the problem was the movant group's failure to submit accurate, fulsome information about itself until pressured to do so by the court and other movants and, after additional information was provided, it showed the movant group's prior trade information to be false.  *See id.* at *1-6.

### CONCLUSION

For the foregoing reasons, Lee respectfully requests that the Court issue an Order: (1) appointing Lee as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated:  May 2, 2024

Respectfully submitted,

POMERANTZ LLP

/s/ Jeremy A. Lieberman
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Jean Lee and Proposed Lead Counsel
for the Class*